**AFFIRM in part; REVERSE AND RENDER in part; REMAND and Opinion Filed August 23, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01606-CV**

**IN THE INTEREST OF B.E.V. AND B.J.V.**

**On Appeal from the 302nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF02-02060**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Lang-Miers

This is an appeal from a final order in a suit to modify the parent-child relationship and suit for enforcement. Father raises four issues on appeal challenging the denial of his motion for enforcement, the granting of Mother's petition to modify, and the award of attorneys' fees. We affirm the portion of the trial court's order denying Father's motion to enforce the divorce decree. We reverse the portion of the trial court's order granting modification of child support and render judgment that modification of child support is denied. We reverse the portion of the trial court's order awarding attorneys' fees to Mother and remand the issue of Mother's attorneys' fees.

### Procedural Background

Mother and Father were divorced in 2004. At that time their son, B.E.V., was nine years old, and their daughter, B.J.V., was two years old. In August 2008 the trial court signed an

agreed order modifying certain provisions of the divorce decree, including Father's child support obligation. In July 2010 Father filed a motion for enforcement complaining that he was deprived of certain flight benefits awarded to him in the divorce decree. In October 2010 Mother filed a petition to modify the parent-child relationship seeking an increase in child support based on a material and substantial change in circumstances. After a nonjury trial at which Mother and Father testified, the trial court denied Father's motion for enforcement, granted Mother's motion to modify, and awarded Mother attorneys' fees.

### ISSUES ON APPEAL

Father raises four issues on appeal challenging the denial of his motion for enforcement, the granting of Mother's motion to modify, and the award of attorneys' fees.

### STANDARD OF REVIEW

Most appealable issues in a family law case, including the issues in this case, are evaluated under an abuse-of-discretion standard. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

Because the traditional sufficiency standards of review overlap with the abuse-of-discretion standard in family law cases, legal sufficiency is not an independent ground of error but is a relevant factor in our assessment of whether the trial court abused its discretion. *A.B.P.*, 291 S.W.3d at 95. To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion, and (2) erred in its exercise of that discretion. *Id.* We conduct the applicable sufficiency review with regard to the first question. *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 867 (Tex. App.—Dallas 2011, no pet.). We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

In reviewing the evidence for legal sufficiency, we view the evidence in the light most favorable to the fact finding, credit favorable evidence if a reasonable trier of fact could do so, and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* We may not sustain a challenge to the legal sufficiency of the evidence unless the record demonstrates: (1) a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id.*

### FIRST ISSUE: FATHER'S FLIGHT PRIVILEGES THROUGH MOTHER'S EMPLOYMENT

In his first issue Father argues that the trial court abused its discretion when it refused to enforce a provision in the divorce decree relating to Father's flight privileges through Mother's employment.

**Background**

Mother is employed as a flight attendant for American Airlines. As a benefit of her employment Mother and the children are eligible for what American describes as "unlimited non-revenue space available (NRSA) employee travel." In addition, Mother is also provided 24 one-way NRSA travel passes per year for other family and friends. Mother's NRSA flight privileges are further classified by their standby boarding priority, which is either D1 (the highest), D2, D2P, or D3 (the lowest). Mother and the children are eligible for unlimited D2 classification passes. Because she is not married Mother is entitled to designate one registered companion. Mother's registered companion is also eligible for D2 classification passes, but unlike Mother and the children, a registered companion's travel is deducted from Mother's annual bank of 24 one-way NRSA travel passes. Mother's parents are eligible for D2 classification passes when traveling with Mother; otherwise they must fly using the lower

priority D2P classification. Mothers' parents' flights are deducted from Mother's annual bank of 24 one-way NRSA travel passes. All other family and friends are eligible for D3 classification passes, and their travel is deducted from Mother's annual bank of 24 one-way NRSA travel passes.

In the 2004 divorce decree the trial court awarded Father D2 flight status through Mother's employment as follows:

> [Father] is awarded the following as [Father's] sole and separate property, and [Mother is hereby divested of all right, title, and interest in and to such property:
>
> . . .
>
> American Airlines D-2 flight status until American Airlines no longer permits flights by [Father]. IT IS ORDERED that [Mother] not interfere with use in any way.

It is undisputed that Father is designated as Mother's sole registered companion. According to the American Airlines business record introduced into evidence as Respondent's Exhibit 1, which lists all travel on American by all passengers using flight privileges stemming from Mother's employment, the only person who flew using Mother's NSRA travel passes and D2 status was Father. Respondent's Exhibit 1 also states that at the end of 2009 and 2010 there was a surplus of unused NSRA travel passes in Mother's account.

After the trial the trial court found that Mother has not interfered with Father's use of his D2 flight status or otherwise violated the provision in the decree concerning that status and use. As a result, the trial court found that the material allegations in Father's motion to enforce the decree were not true and denied the motion.

**Analysis**

On appeal Father argues that the evidence is insufficient to support the trial court's findings relating to his flight privileges, and that the trial court abused its discretion when it denied Father's motion to enforce the decree. According to Father, the language of the decree is

unambiguous and gives Father the sole right to use Mother's D2 flight status, to designate who else could use it, and to "exclude any and everyone from that status." In other words, Father essentially argues that he has exclusive control over who can use all of Mother's annual bank of 24 one-way NRSA travel passes.[1] Otherwise, Father argues, he "could not make sure he would actually be able to fly" since other people traveling using Mother's flight privileges "could use up the 24 one-way passes."

In response, Mother argues that the decree only grants Father continued D2 flight status and prohibits Mother from interfering with that status—it does not award or guarantee Father any flight passes, or give Father the exclusive to designate and exclude other passengers from traveling using Mother's flight passes. We agree with Mother. Construing the decree as it is written, it essentially requires Mother to designate Father as her registered companion so that Father can fly using a higher boarding priority—D2 flight status—if and when he travels using Mother's flight passes. It does not award or guarantee Father any flight passes, or give Father the exclusive right to designate and exclude other passengers from traveling using Mother's flight passes.

Father complains that Mother's parents took seven round-trip flights using D2 status after August 2008. To the contrary, the record demonstrates that Mother's mother took only one trip, in October 2008. The record also demonstrates that Father was the only person who flew using Mother's NSRA travel passes and D2 status. During his testimony Father did not identify any trips he was unable to take due to Mother's claimed interference with Father's D2 status, and the record demonstrates that unused round-trip tickets remained in Mother's account at the end of

---

[1] During the trial Father explained his understanding of the flight privileges provision in the decree as follows:

> The D-2 flight status is—[Mother] has been employed with American Airlines 21 years. And as an employee of American she is allowed twelve round-trip tickets per year as a benefit of her being an employee. And so—those were awarded to me exclusively. And so—that's what it is. And I can fly anywhere that American flies anytime I want whenever—twelve times a year.

2009 and 2010. As a result, the evidence supports the trial court's finding that Mother did not interfere with Father's use of his D2 flight status, and we cannot conclude that the trial court abused its discretion when it denied Father's motion to enforce the decree. We overrule Father's first issue.[2]

SECOND AND THIRD ISSUES: CHILD SUPPORT MODIFICATION

In his second issue Father argues that the trial court abused its discretion when it increased his monthly child support obligation because the record does not contain sufficient evidence to support the exercise of the trial court's discretion. In his third issue Father argues that the trial court lacked plenary power to sign a new order amending the child support award in response to Mother's motion for judgment nunc pro tunc.

**Background**

In the 2004 divorce decree Father was ordered to pay $1,057.66 per month in child support for the couple's two children, who were living with Mother at the time. On August 27, 2008, the trial court signed an agreed order reducing Father's child support to $792.50 ($725 for support and $67.50 for medical insurance) because the couple's son began living with Father. On October 11, 2010, Mother filed a petition to modify the parent-child relationship seeking an increase in child support based on a material and substantial change in circumstances.

During trial Mother testified generally that her kids need "various things" as they get older, such as clothes and lunches, and that it is "hard to get by" with her current income. Mother testified that she could not afford for her daughter to play "select soccer," which costs around $350 to enroll. Mother also testified that she was assessed fees for Father's flights using

---

[2] Father also argues that the trial court abused its discretion by not awarding him a money judgment for $5,250 total—$750 for each of the seven round-trip flights Father alleges that Mother's parents took after August 2008. During trial, however, Father did not ask for a money judgment for $5,250. Instead, he asked for a money judgment of $23,250—$750 for each of the 23 round-trip tickets used by other people from Mother's flight passes since 2004. As a result, Father's argument on appeal does not comport with his argument at trial and we do not address it. *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.) ("[A] party's argument on appeal must comport with its argument in the trial court.").

Mother's flight privileges, and that those fees resulted in deductions from Mother's paychecks totaling $834.07 in 2009; $1,983.16 in 2010; and $1,815.78 in 2011. When asked how those deductions affected her ability to pay her monthly bills, Mother responded, "It makes it very, very difficult." Mother also introduced into evidence Father's bank statements showing that Father made deposits of more than $500,000 in 2010.

On August 26, 2011, the trial court filed and sent the parties a docket sheet memorandum granting Mother's motion to modify and awarding attorneys' fees to Mother as follows:

> M/Enforce denied. M/Modify child support amt granted. Court finds that Father has capped out on his net resources and Court orders Father to pay guideline c/s based on $7500 net resources beginning 9-1-11 and 1st of each month thereafter until emancipation or further order of the Court. . . . Court awards [Mother] attys fees in the amount of $20,000 . . . .

On October 28, 2011, the trial court signed an order increasing Father's child support for the daughter to $1,005 per month ($937.50 in support and $67.50 for health insurance). The trial court found that Father's monthly net resources were $7,500, and that the percentage applied to this amount was 17.5%. In April 2012 Mother filed a motion for a nunc pro tunc order asking the court to correct a math error in the trial court's order because 17.5% of $7,500 is $1312.50, not $937.50. The trial court held a hearing on that motion. During the hearing Father argued that the trial court was being asked to "substantially change the judgment," and that it was precluded from doing so because its plenary power had expired. The trial court explained that the mathematical error arose from the trial court erroneously treating the $7,500 as gross monthly income rather than net monthly resources. After confirming that Father is self-employed, the trial court granted the motion and signed a new order on April 25, 2012 setting child support at $1,368.19 ($1,300.69 in support and $67.50 in health insurance).

**Applicable Law**

A trial court may modify a prior child support order if "the circumstances of the child or a person affected by the order have materially and substantially changed" since the date of the prior order's rendition. TEX. FAM. CODE ANN. § 156.401(a)(1) (West Supp. 2012). In determining whether there has been a material and substantial change in circumstances, it is well-settled that the trial court must examine and compare the circumstances of the parents and any minor children at the time of the order to be modified with the circumstances existing at the time modification is sought. *See In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.). As a result, in order for the trial court to have sufficient evidence upon which to exercise its discretion, the record must contain both historical and current evidence of the relevant financial circumstances. *Id.* Without both sets of data, the court does not have any evidence to compare and cannot determine whether a material and substantial change has occurred. *Id.* at 918. The movant has the burden to show the requisite material and substantial change in circumstances since the entry of the previous order. *Id.*

**Analysis**

The parties agree that Mother, as the movant, bore the burden to show the requisite material and substantial change in circumstances. On appeal Father contends that Mother did not meet her burden because there was no evidence of the circumstances existing at the time of the order to be modified. In response Mother primarily argues that there is sufficient evidence to support the increase in child support because Mother testified that the daughter's expenses have increased and that Father's use of Mother's flight privileges made it difficult for Mother to pay her monthly bills.

In order to determine whether a material and substantial change in circumstances has occurred, the trial court was required to consider the circumstances in 2008—the time of the

order to be modified. In this case, Mother did not present any testimony or other evidence concerning the circumstances in 2008, such as evidence of her income or expenses or Father's income or expenses. Mother generally testified that her daughter needed various things as she got older, including clothes, lunch, and an enrollment fee for select soccer, and Mother testified that Father's travels resulted in deductions from her paychecks in 2009, 2010, and 2011. But without any testimony or other evidence concerning the circumstances in 2008, the trial court did not have sufficient information to determine that there has been a material and substantial change in circumstances.

During oral argument Mother's counsel argued that section 156.401(a)(1) does not require Mother to introduce into evidence "complete financials from 2008." We agree. We recognize that a trial court's decision regarding a material and substantial change in circumstances is fact-specific and not guided by rigid or definite rules. But in order for the trial court to conclude that there has been a material and substantial change in circumstances warranting a modification of a parent's monthly child support obligation the movant must present at least some testimony or other evidence sufficient to enable a trial court to compare the circumstances at the time of the order to be modified with the circumstances existing at the time modification is sought. *See In re C.C.J.*, 244 S.W.3d at 917.

Based on the record in this case, we conclude that the trial court did not have enough evidence to support the exercise of its discretion. As a result, the trial court abused its discretion when it increased Father's monthly child support obligation. *See, e.g.*, *id.* at 918 (concluding trial court abused its discretion when it increased appellant's monthly child support obligation because there was no evidence of the record of the financial circumstances at the time of the order to be modified to support the trial court's finding of a material and substantial change in circumstances).

Mother argues, in the alternative, that we can affirm the child support award based on section 156.401(a)(2) of the family code, which allows a trial court to modify a child support order "if it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines." TEX. FAM. CODE ANN. § 156.401(a)(2). In response, Father argues, in part, that section 156.401(a)(2) does not apply because Mother sought modification based on a material and substantial change in circumstances, and the trial court's order was based on a material and substantial change in circumstances. We agree. We will not affirm the child support award on a ground not raised below. *See Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 290 (Tex. App.—Dallas 2008, pet. denied) ("We will not affirm the trial court's order based on a legal theory not presented to the trial court[.]"); *Barber Lumber & Mfg. Co. v. Reeves*, 40 S.W.2d 248, 249 (Tex. Civ. App.—Beaumont 1931, no writ) ("appellee is confined to the issues made by his pleadings, and we cannot affirm the judgment upon a theory [ ] not raised by the pleadings); *cf. In re J.D.D.*, 242 S.W.3d 916, 922 (Tex. App.—Dallas 2008, pet. denied) (declining to consider appellant's argument that trial court abused its discretion when it refused to modify child support award based on section 156.401(a)(2) because appellant did not include this ground for modification in his petition).

In his third issue Father argues that the trial court lacked plenary power to sign the new order amending the child support award in response to Mother's motion for judgment nunc pro tunc. More specifically, Father argues that the change in child support did not merely correct a clerical error because the trial court "conducted its own factual investigation" about Father's self-employment status and "used reasoning and judgment" in setting the new award amount.

Because we have already concluded that the trial court did not have sufficient evidence to increase the child support award, we do not address Father's third issue.

### FOURTH ISSUE: ATTORNEYS' FEES

In Father's fourth issue he argues that if he prevails on one or more of his issues on appeal, the award of attorneys' fees should be reversed and remanded. Mother agrees. In light of our resolution of Father's second issue we conclude that remand is appropriate. *See, e.g.*, *In re C.C.J.*, 244 S.W.3d at 924 (reversing and remanding award of attorneys' fees because evidence was insufficient to support modification of child support).

### CONCLUSION

We affirm the portion of the trial court's order denying Father's motion to enforce the divorce decree. We conclude that the trial court's finding of a material and substantial change in circumstances is not supported by the record. As a result, we conclude that the trial court abused its discretion when it increased Father's monthly child support obligation. We reverse the portion of the trial court's order granting modification of child support and render judgment that modification of child support is denied. We reverse the portion of the trial court's order awarding attorneys' fees to Mother and remand the issue of Mother's attorneys' fees for reconsideration by the trial court in light of this opinion.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

111606F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF B.E.V.AND B.J.V.

No. 05-11-01606-CV

On Appeal from the 302nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF02-02060.
Opinion delivered by Justice Lang-Miers,
Justices Moseley and Bridges participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's order granting modification of child support and **RENDER** judgment that modification of child support is **DENIED**.

We **REVERSE** that portion of the trial court's order awarding attorneys' fees to Julie Vodicka and **REMAND** the issue of Julie Vodicka's attorneys' fees for reconsideration by the trial court.

In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party shall bear its own costs of appeal.

Judgment entered this 23rd day of August, 2013.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE